THE ANNIE HARJES.[1]

BRITISH & F. MARINE INS. CO. *v.* THE ANNIE HARJES.

*(District Court, S. D. New York.  April 9, 1891.)*

CARRIERS—DISCHARGE OF CARGO—IMPROPER DOCK—LOSS OF VESSEL.

A coal-boat, while lying at a wharf under which a sewer discharged, was sunk at the wharf by an unusual discharge from the sewer, due to a heavy shower. Libelant insured the sellers and shippers of the cargo, and, on an abandonment by them, paid the loss, and brought this suit to recover damages against the carrier for negligence in going to an improper dock. The title to the coal had passed to the consignee before the accident. The consignee sent the vessel to the wharf, accepted part of the cargo, and made no objection to her lying there. When the shower came on the master was unable to get away, owing to the presence of other vessels. *Held* that, under such circumstances, no action for going to the dock could be maintained against the boat by either the shipper or consignee, and none, therefore, could be maintained by the insurer.

In Admiralty.  Suit to recover damages for discharging cargo at improper dock.

*Goodrich, Deady & Goodrich,* for claimant.

*Butler, Stillman & Hubbard, (Mr. Mynderse* and *Mr. Cromwell,* for libelant.

BROWN, J.  On August 22, 1890, the canal-boat Annie Harjes, with 280 tons of coal, was towed from Port Johnson, and landed at the end of the short projecting pier at Seventy-Ninth street, East river.  She was directed by the bill of lading to land at Seventy-Sixth street, but, not being able to obtain a berth there, she went, under the general directions of Mr. Harjes, the consignee, to Seventy-Ninth street, where she unloaded about 80 tons during the same day.  A sewer, the mouth of which is about 5 feet in diameter, empties beneath the surface of the pier.  It is covered at high water, and, as the captain says, was not visible when the boat arrived there, but was seen when the tide fell. About 7 P. M. a shower came up, which proved extraordinary, and the discharge of water from the sewer, and from over the dock also, as the master now says, filled and sank his boat at about half past 9 P. M.  The libelants insured Heilner & Co., the sellers and shippers of the cargo, under a standing policy on account of whom it may concern.  On an abandonment made by them, and in their names, the libelants settled with them, and took a cession of all their claims, and then filed this libel to recover damages for negligence of the carrier in going to an improper dock to discharge.  The shipment of coal was upon a cash sale.  Harjes paid for the coal the day it was towed to New York, and, as he testifies, owned the coal and took the risk, paying the shipper for the insurance, and the insurance being, as he says, according to the usual course of dealing, for his benefit.  The insurers, after raising the damaged coal, turned it over to the consignee at an agreed price, but without receiving

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

any payment therefor from him, and gave a check to Heilner & Co. for the damage, which they transferred to Harjes, the consignee. Mr. Harjes was part owner of the Annie Harjes, and sent her to Port Johnson for the coal.

Upon the above facts some troublesome questions of insurance law have been suggested; but it is unnecessary to consider them, as, upon other grounds, I think the libel should be dismissed. *The Sydney*, 27 Fed. Rep. 119. The coal having been bought by the consignee, and paid for by him on the 22d, before the accident, and delivered upon the vessel sent by him to receive it, the delivery to the consignee was thereby complete, the title thereto passed to him, and the shippers no longer had any interest in it. The designation of Seventy-Sixth street in the bill of lading as the place of unloading was for the consignee's benefit only; it could be lawfully changed by him *ad libitum.* The shipper had no interest in it. The consignee's direction to the boat to proceed to Seventy-Fifth or Seventy-Ninth street to discharge, if no berth could be obtained at Seventy-Sixth street, being a direction competent for him to give, the vessel is protected by this order against any charge of negligence in obeying it, whether the dock was a perfectly safe and proper one or not. The consignee had notice also of her presence there, accepted part of the cargo, and made no objection to her lying there. When the shower came on the captain tried to get away, but could not, because two schooners had in the mean time come up and made fast outside of him, and they refused to move. He was helpless. Under such circumstances no action for going to that dock could be maintained against the boat by either the shipper or the consignee, and none therefore by the libelant. A similar accident occurred to a coal-boat at this wharf in July, 1884, which was the subject of a suit in *Behan* v. *Mayor, etc.*, 24 Fed. Rep. 239. The evidence in the present case was very different from the evidence in that case as regards any precautions usually taken against the sewer, and its ordinary safe condition. But it is unnecessary to consider this further. Libel dismissed; but, as the dismissal is upon a point raised only by amendment of the pleadings at the trial, it must be without costs.